# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANNI ANITA KINNARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 17-1004-JWL |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Administrative Law Judge's (ALJ) evaluation of the medical source opinions, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further, consistent proceedings.

**I.     Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSI benefits, alleging disability beginning November 1, 2012. (R. 12, 165). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the ALJ erred in weighing the medical opinions of the consultative examiners and the "other" medical source opinion of her nurse practitioner.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

     The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

      The court finds that remand is necessary because the ALJ erroneously evaluated the medical source opinions.[2]

## II.    Discussion

      Plaintiff claims the ALJ's reasons for discounting the opinions of the consultative examiners and of her nurse practitioner are insufficient.  This is so in Plaintiff's view because in discounting Dr. Allen's opinion the ALJ did not explain how Plaintiff's different presentation at Dr. Hackney's examination should discount Dr. Allen's examination, because Dr. Allen formed her opinion while accounting for the problems with Plaintiff's presentation and Plaintiff's lack of effort at the examination, and because

---

[2]Although nurse practitioner Coleman is not an "acceptable medical source" within the meaning of the regulations and her opinion is not technically a "medical opinion," she is a medical source and hers is an "other" medical source opinion.  SSR 06-3p.

the ALJ erred in finding that an inability to perform job-related functions cannot be inferred from Plaintiff's not being "used to" demonstrating the self-discipline and organization necessary to most jobs.  With regard to discounting Dr. Hackney's opinion, Plaintiff argues that Dr. Hackney specifically considered the difference between Plaintiff's presentation at his examination and its inconsistencies with Dr. Allen's examination when formulating his opinion, and although the ALJ found Dr. Hackney's opinion inconsistent with the other record evidence he did not point to any specific inconsistencies.  Finally, she argues that the ALJ's reasons for discounting nurse practitioner Coleman's opinion are erroneous because he did not cite specific activities engaged in by Plaintiff which are inconsistent with the opinion, he ignored those of Ms. Coleman's treatment notes which are consistent with her opinions, and he did not point to specific evidence demonstrating that the global assessment of functioning (GAF) score assessed by Ms. Coleman is inconsistent with her opinion regarding functioning.

    The Commissioner begins her argument by pointing out that the ALJ considered the inconsistencies in Plaintiff's statements, noting that Dr. Hackney found her to be exaggerating and malingering, was passive-aggressive and uncooperative, and she provided information to Dr. Allen which was quite different than that which she provided to him.  (Comm'r Br. 7).  The Commissioner noted that Dr. Allen's assessment was similar to Dr. Hackney's, specifically that she questioned Plaintiff's effort, and noted Plaintiff was vague.  The Commissioner argues that "[t]he ALJ appropriately considered the results of these two examinations when he found that Plaintiff's statements were

5

inconsistent with the rest of the record." (Comm'r Br. 8). She argues that "Plaintiff does not contest the ALJ's findings regarding the consistency of her statements, and has therefore waived any such argument." Id. The court perceives this as an argument that Plaintiff cannot contest the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (R. 17).

The Commissioner next argues that the ALJ reasonably discounted portions of each of the medical source opinions. She argues that Plaintiff's exaggerations and inconsistent statements justify rejecting the psychologists' opinions that Plaintiff cannot do a job or get along with others. (Comm'r Br. 10). She argues that "it was valid for the ALJ to consider evidence that Plaintiff's symptoms were not as disabling as she alleged when deciding what weight to accord medical opinions," because "here Dr. Hackney found Plaintiff was malingering, that she overstated her symptoms, and that she refused to perform on testing." (Comm'r Br. 11) (citing Riviera v. Colvin, 629 F. App'x 842, 845 (10th Cir. 2015)). She argues that it was appropriate to discount the opinions because they were inconsistent with the other record evidence, the objective findings, and Plaintiff's treatment notes. Id. She argues that the state agency psychologists also noted the inconsistencies and their opinions bolster the ALJ's findings. Id. at 13. Finally, she argues that Ms. Coleman's extreme opinions are inconsistent with her treatment notes and with the GAF score assessed, and that the ALJ reasonably relied upon the fact that Plaintiff's activities are inconsistent with Ms. Coleman's opinion.

### A. The ALJ's Findings

As the Commissioner's Brief suggests, the ALJ found Plaintiff's allegations of symptoms "are not entirely credible," and he explained his reasons for that finding, including "that there are inconsistencies between the claimant's allegations and the medical evidence of record." (R. 20). Moreover, Plaintiff does not claim error in that finding and the time for doing so is past.

What Plaintiff challenges is the ALJ's evaluation of the medical source opinions regarding Plaintiff's mental impairments and mental functioning, and the court summarizes that evaluation here. First, the ALJ considered the opinions of the state agency psychological consultants, including Dr. Blum, who had reviewed the record evidence including the consultative examination reports of Dr. Allen and Dr. Hackney and he gave the opinion of Dr. Blum some weight. He explained why he had partially discounted Dr. Blum's opinion:

> Subsequent records as well as hearing testimony offered by the claimant support a finding that the claimant cannot tolerate close "over-the-shoulder" supervision, and may occasionally interact with colleagues if meetings are brief and task oriented. The claimant may work in environments that do not require more than rudimentary literacy. Thus, this assessment is more restrictive than that of the State agency medical consultant but is more consistent with the record as a whole.

(R. 21-22).

The court includes the ALJ's complete evaluation of Dr. Allen's and Dr. Hackney's psychological consultation reports:

> In reaching this conclusion, the undersigned has considered the written opinion of Molly Allen, Psy.D., who opined that the claimant would be able to make simple work task decisions. In addition, Dr. Allen opined that the

7

claimant was "unused" to demonstrating the self-discipline and organization necessary in most job settings, and would thus have a difficult time being able to understand, carry out, and remember instructions; work at a reasonable pace, respond appropriately to supervision and coworkers, handle expectable pressures in a work setting (Exhibit 1F/3). Overall, Dr. Allen's opinion is afforded little weight.

Dr. Allen's findings are inconsistent with the claimant's manipulative presentation at the evaluation performed by Dr. Hackney less that one month later (discussed above) and with the overall record. Further, Dr. Allen noted that it was "possible that the claimant may be overstating how much she cannot do" (Exhibit 1F/3). Similarly, while Dr. Allen opined that the claimant was "unused to" performing a number of job-related functions, the overall evidence does not support a finding that the claimant could not reasonably over a short-time learn those functions in order to sufficiently perform simple work tasks. An inability to perform job-related functions cannot be inferred from the claimant's being unused to doing so.

Similarly, consultative evaluator Gary Hackney, Ph.D. opined that the claimant could not maintain an adequate relationship with coworkers or supervisors. In addition, Dr. Hackney opined that while the claimant could understand and perform simple tasks, she would not be able to keep a work schedule with average performance demands (Exhibit 3F/6). Dr. Hackney's opinion is afforded little weight.

As discussed above, Dr. Hackney indicated during his evaluation with the claimant that she "literally would not allow me to measure her abstract reasoning, or judgmental skills as she would not cooperate on those subtests ... she did everything possible to look much worse than she is. She put forth little effort and actively avoided the correct answers whenever she possibly could" (Exhibit 3F/6). During the evaluation with Dr. Hackney, the claimant denied hallucinations and anxiety attacks, but endorsed them less than three weeks earlier on consultative evaluation with Dr. Allen (Exhibit 1F). Similarly, the claimant told Dr. Hackney she held two jobs in her lifetime each lasting six months (Exhibit 3F/4), while she reported to Dr. Allen her longest held job was only two weeks (Exhibit 1F/1). These inconsistencies and manipulative behaviors cast doubt on the validity of the claimant's test results and credibility. Thus, as the opinion of Dr. Hackney lacks support from treatment notes or objective findings and is not consistent with the other evidence of record, it is given little weight.

8

(R. 22).

Finally, the ALJ explained that he had accorded only little weight to Ms. Coleman's opinion because he found it inconsistent with reports of Plaintiff's activities showing a greater capacity, inconsistent with Ms. Coleman's treatment notes, and inconsistent with the GAF score Ms. Coleman assessed showing only moderate limitations. (R. 23). He also noted that Ms. Coleman is not an acceptable medical source. Id.

### B.    Analysis

The court finds error in the ALJ's evaluation of the medical source opinions for three primary reasons. First, the court finds that the circumstances of this case make it inappropriate for the ALJ to discount the opinions of the consultative psychologists, particularly the opinion of Dr. Hackney, on the basis of Plaintiff's manipulative and passive-aggressive presentation, exaggeration, malingering, deliberate lack of effort, and refusal to appropriately engage in testing during the examinations. As the Commissioner suggests, each of these behaviors is a valid reason to find Plaintiff's allegations of symptoms less-than-credible, and the ALJ appropriately did so. (R. 17). And Plaintiff does not argue otherwise. And, as the Commissioner argues, it is appropriate in the proper case to discount a medical source opinion because it is based on the plaintiff's subjective complaints which have been found to be incredible, or where there is reason to believe the plaintiff "gamed" the examination, or where the medical source missed or ignored certain evidence contrary to his or her opinion. However, this is not that case.

Here, Plaintiff has been found incredible in part because of the behaviors noted above, and this is evidence she may have tried to "game" the examinations. However, Dr. Allen and Dr. Hackney do not appear to have been ignorant of or otherwise to have ignored these behaviors. In fact, each of them believed that Plaintiff did not give her best effort or was otherwise not forthright in her presentation or conduct. And they stated they took those facts into consideration when they formed their opinions, included those facts when they prepared their reports, and explained that their opinions accounted for those behaviors. Therefore, in order to discount the psychologists' opinions on the basis of Plaintiff's behavior, it would be necessary to explain some way in which the psychologists misunderstood Plaintiff's behavior or point to evidence which was missed or evidence of a psychological or other medical principle which was missed or misapplied by the psychologists. The ALJ did not do that.

In reference to Dr. Hackney's opinion, the ALJ stated that these "behaviors cast doubt on the validity of the claimant's test results and credibility" (R. 22), and uses this as one basis to discount Dr. Hackney's opinion. However, a fair reading of Dr. Hackney's report reveals that he also doubted Plaintiff's credibility and found that the IQ test score of 44 was not valid. As the ALJ acknowledged, Dr. Hackney noted that the results of the test were a full scale IQ score of 44, and he discussed Plaintiff's "total lack of cooperation" and other serious shortcomings when taking the test. (R. 281). He then summarized his evaluation of the test results:

10

> Dr. Allen estimated that [Ms. Kinnard] was functioning at the borderline range of intelligence. I have placed her at the high mental retardation range to low borderline range of intelligence level. <u>Given these two estimates</u>, one can see how little effort she put into the WAIS-IV test when given to her.

(R. 281) (emphasis added). By comparing the IQ test results negatively to his and Dr. Allen's estimates, there can be no doubt that Dr. Hackney found the IQ test results invalid. While some of the ALJ's other reasons to discount Dr. Hackney's opinion ("lacks support from treatment notes or objective findings and is not consistent with the other evidence of record") <u>may</u> be supported by record evidence, neither the ALJ's decision nor the Commissioner's Brief identify such evidence particularly. Moreover, at least the objective findings of both Dr. Allen's examination and Dr. Hackney's examination tend to be consistent with Dr. Hackney's opinion, and those opinions along with Ms. Coleman's opinion are, at least in a broad sense, consistent record evidence suggesting disability. The court does not mean to suggest that these medical source opinions must be given significant weight on remand, but if they are to be discounted, the Commissioner must give specific reasons which are supported by the record evidence.

Second, as the ALJ acknowledged, Dr. Allen opined that Plaintiff "is quite unused to demonstrating the self-discipline and organization necessary in most job settings, and would thus have a difficult time being able to understand, carry out, and remember instructions; work at a reasonable pace, respond appropriately to supervision and coworkers, [and] handle expectable pressures in a work setting." (R. 274). The ALJ rejected this opinion, reasoning that:

> while Dr. Allen opined that the claimant was "unused to" performing a number of job-related functions, the overall evidence does not support a finding that the claimant could not reasonably over a short-time learn those functions in order to sufficiently perform simple work tasks. An inability to perform job-related functions cannot be inferred from the claimant's being unused to doing so.

(R. 22).

It is true that one would expect that an individual with no mental impairments could learn the abilities to understand, carry out, and remember instructions; work at a reasonable pace, respond appropriately to supervision and coworkers, and handle expectable pressures in a work setting, sufficiently to perform simple work tasks, and that she would not be unable to do so merely because she is not "used to" doing so. What the ALJ's reasoning ignores is that Plaintiff is not an individual without mental impairments. He specifically found that she has "schizoaffective disorder, major depressive disorder, generalized anxiety disorder, and <u>learning disorder</u> not otherwise specified." (R. 14) (bolding omitted, emphasis added). Moreover, Dr. Allen provided a "rule out" diagnosis of borderline intellectual functioning. (R. 274). Dr. Allen is a psychologist qualified to opine with regard to the functionally limiting effects of missing self-discipline and organization and not being "used to" performing the mental functions listed, whereas the ALJ and this court are not. Therefore if he is to discount Dr. Allen's medical opinion, he must point to some error in Dr. Allen's process or reasoning, or to evidence in the record or admissible psychological authority which is contrary to Dr. Allen's finding. To rely upon what he or some other lay observer believes one could reasonably learn over a short

period of time, without evidentiary support, is to substitute his medical judgment for that of the psychologist.  While it is the ALJ's position to assess RFC based on all of the evidentiary record, and in doing so he must weigh the medical opinions, he may not reject the opinion of a medical professional merely because he disagrees with it or because he believes the medical professional simply misdiagnosed the condition.  Winfrey v. Chater, 92 F.3d 1017, 1022-23 (10th Cir. 1996).

Finally, in discounting the medical source opinions as inconsistent with the record as a whole, the ALJ has excluded the medical source opinions from the record as a whole and has ignored the remaining portions of the record which do support a finding of disability.  In a case such as this where the ALJ has rejected all of the relevant medical source opinions formulated by those who have treated or examined the plaintiff, it becomes more important that the ALJ (or at least the Commissioner in her arguments before the court) point to specific contrary or inconsistent evidence, and to explain why that record evidence which supports those medical source opinions is less persuasive or less significant than the contrary or inconsistent evidence.  Where the evidence is equivocal, and it usually is, it is for the ALJ not the court to weigh the evidence.  But, he must explain the bases for his findings, and he may not merely ignore the evidence which is contrary to his decision.

Remand is necessary for the Commissioner to appropriately weigh the medical source opinions.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 28th day of November 2017, at Kansas City, Kansas.

s:/   John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**